

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

April 26, 1948

Hon. George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-555

Re: Gas production tax liabil-
ity on royalty interest
owned by Dunn Estate
under submitted facts.

Dear Mr. Sheppard:

It appears from your letter request that you have made a gas production tax audit on the royalty interest of the Dunn Estate, covering the period from July, 1935, to January 1, 1948. The copy of your audit discloses that you have found additional taxes due from the Dunn Estate as follows:

(1) For the period through the month of October 1936, the sum of $704.19, accruing under the 1931 gas production tax act.

(2) For the period through the month of April, 1941, the sum of $2,395.52 accruing under the 1936 amendment of said act.

(3) For the period through the month of May, 1945, the sum of $3,044.79 accruing under the 1941 amendment of said act.

(4) For the period through the month of December, 1947, the sum of $1,275.73 accruing under the 1945 amendment of said act.

It further appears that during all the time covered by the audit, the Dunn Estate paid production taxes based on one-eighth of the gross receipts of the lessee who sold the full production from the Dunn lease.

The gas in question was produced under an oil and gas lease wherein the lessee agreed to purchase from the lessor all its supply of natural gas used in Nueces County and to pay lessor for the gas produced under the lease, one-eighth of the amounts received by lessee from the sale of gas to parties using the same in Nueces County whether produced from lands covered by the

lease or from wells situated on lands not included in the lease. In 1930, this lease was by written contract amended, and, as amended, provided that, in lieu of the above-stated method of payment for the one-eighth royalty, the lessor was to pay lessee for one year on the basis of a minimum of 4,000,000 cubic feet of gas per day and for the next twenty-one years on the basis of a minimum of 5,000,000 cubic feet of gas per day. Such contract provided that the lessee would pay to lessor on the basis of the minimum stated whether that amount was produced from the leased premises or not. The only condition was that the total production from all leases held by lessee be sufficient to supply the minimum. There was a further proviso to the effect that if more than the minimum was produced from the leased premises, the lessee would pay lessor one-eighth of the additional proceeds received for such additional production. This contract also provided that lessor would be paid on the basis of the sale price per thousand cubic feet as set forth in a contract between lessee and the City of Corpus Christi, and that if such city contract terminated, then on the basis of the highest price received by lessee, but in no event less than 5 cents per thousand cubic feet. Your summary of the gas audit discloses that the minimum amount of gas was never produced from the leased premises, and that during the months of May, June, and August through December, 1939, and January through April, 1940, and May 1941 through December 1941, no gas was produced from the Dunn lease.

The Dunn Estate contends that it does not owe the additional tax which is set up in the audit on the basis of the amount actually received for its one-eighth royalty for the following reasons:

(1) That the 1931 act does not make a royalty owner a producer.

(2) That the term "market value" as used in the 1931 act is to be given its ordinary meaning.

(3) That the term "market value" as used in the 1936 amendment is to be given its ordinary meaning.

(4) That under the 1945 amendment the definition given the term "market value" does not warrant basing the production tax on the actual amount received by a royalty owner producer.

(5) That the amount received by the Dunns, under the amended contract, in addition to the

amount actually received by the lessee for the one-eighth royalty, was in consideration of the cancellation of a previous contract, and was not received by the Dunns for the sale to lessee of its one-eighth royalty. This last contention covers all four taxing periods as set out in your audit.

The applicable provisions of the 1931 Act, H. B. No. 547, Ch. 73, p. 111, Acts 42nd Leg., read, in part, as follows:

". . . every person engaging or continuing within this State, in the business of producing and saving in paying quantities, for sale or for profit, any natural gas, including casinghead gas, from the soil or waters of this State. . . .

"Are hereby declared to be 'producers' and engaged in the business of producing natural gas within this State. . . .

"A tax shall be paid quarterly by each such producer on the amount of gas produced and saved within this State. . . upon the first sale thereof in intrastate commerce upon the following basis: A tax equivalent to two (2%) per cent of the market value of the total amount of gas produced and saved within this State . . ."

The applicable provisions of the 1936 amendment, H. B. No. 8, Ch. 495, Acts 44th Leg., 3rd Called Session, read, in part, as follows:

"A tax shall be paid by each such producer on the amount of gas produced and saved within this State, . . . upon the following basis: A tax equivalent to three per cent (3%) of the market value of the total amount of gas produced and saved within this State, . . . at the actual market value thereof, as and when produced. . .

"The purchaser of gas shall pay the tax on all gas purchased and deduct tax so paid from payment due producer or other interest holder. . .making such payments so deducted to the Comptroller of Public Accounts by legal tender or cashier's check payable to the State Treasury. (Emphasis added).

This 1936 amendment does not define the term "market value."

The 1941 amendment, H. B. No. 8, ch. 184, p. 269, Acts 47th Leg., reads, in part, as follows:

"A tax shall be paid by each producer on the amount of gas produced within this State. . . equivalent to five and two tenths (5.2) per cent of the market value of all gas including casinghead gas produced and saved within this State. . .

"The market value of gas produced in this State shall be the value thereof plus any bonus, or premium, or anything of value paid therefor, or any sum of money that such gas will reasonably bring if produced and sold in accordance with the laws, rules and regulations of this State. . .

"In case gas is sold for cash the tax shall be computed on the producers' gross receipts of such sale;
. . .

"For the purpose of this Act 'producer' shall mean any person owning, controlling, managing, or leasing any gas well and/or any person who produces in any manner any gas by taking it from the earth or waters in this State, and shall include any person owning any royalty or other interest in any gas or its value whether produced by him, or by some other person on his behalf, either by lease, contract, or otherwise. . .

"Royalty owners shall mean and include all persons owning any mineral rights under any producing leasehold within this State, other than the working interest, which working interest is that of the person having the management and operation of the well."

The 1945 Amendment, H. B. No. 628, Ch. 269, p. 423, Acts 49th Leg., reads, in part, as follows:

"There is hereby levied an occupation tax on the business or occupation of producing gas within this State, computed as follows:

"'A tax shall be paid by each producer on the amount of gas produced and saved within this State equivalent to five and two-tenths (5.2) per cent of the market value thereof as and when produced. . . .'

"The market value of gas produced in this State shall be the value thereof at the mouth of the well; however, in case gas is sold for cash only, the tax shall be computed on the producer's gross cash receipts. . . ."

The definition of "producer" as contained in the 1941 amendment was not changed by the 1945 amendment. This gas production tax act, with amendments is codified as Article 7047b, V.C.S.

Your audit also discloses that you found additional taxes due by virtue of the amounts paid lessor under the amended contract during those months in which there was no production.

A determination of lessor's five contentions as above summarized will determine the tax liability of lessor for the additional tax as shown in your audit. We will discuss them in the order stated.

### FIRST CONTENTION

We have carefully read the 1931 act in its entirety and do not find any language therein which in our opinion makes a royalty owner a "producer." The Supreme Court of Texas in Canadian River Gas Co. v. Bivins, 153 S.W. (2d) 432, in answering a certified question as to the status of gas royalty holder under the act as amended in 1936, stated that "the gas royalty holder is an 'interest holder' within the meaning of this statute." The 1931 Act did not contain the words "or other interest holder." It is, therefore, our opinion that the Dunn Estate is not liable for the additional gas production tax in the amount of $704.19 for the period from July, 1935, through October, 1936.

### SECOND CONTENTION

Our holding on the proposition presented by your first contention makes it unnecessary to discuss this contention.

### THIRD CONTENTION

We have read the 1936 Amendment in conjunction with the 1931 Act; and, in light of the opinion of the Supreme Court in W. R. Davis, Inc. v. State, 180 S.W. (2d) 429 (which construed the term "market value" as defined in the 1941 amendment), have arrived at the conclusion that the term "market value" as used in the 1936 Amendment should be given its ordinary meaning. It is, therefore, our opinion that the Dunn Estate is not liable for the additional gas production tax in the amount of $2,395.52 for the period from November, 1936, through April, 1941.

### FOURTH CONTENTION

The following excerpts from the 1945 Amendment, previously quoted in part, are relevant portions of the statutory definition of "market value":

"The market value of gas produced in this State shall be the value thereof at the mouth of the well; however, in case gas is sold for cash only, the tax shall be computed on the producer's gross cash receipts. . . ."

The 1941 amendment, which was construed in the Davis case (supra), among others, gave the following definition:

"In case gas is sold for cash the tax shall be computed on the producer's gross receipts of such sale; . . ."

Although the Supreme Court in the Davis case was primarily concerned with that part of the definition of "market value" which relates to cases in which the gas was processed for its liquid hydrocarbon content, the following significant language appears: "When we view this Act as a whole, and especially when we consider the definition of 'market value' therein contained, we are convinced that it demonstrates a clear legislative intent to make the good faith sale price by the producer to the initial purchaser the standard of value on which the purchaser's liability to the State for taxes must be computed." (Underscoring ours)

The one-eighth royalty gas was sold to the lessee under the amended contract for cash only. It is, therefore, our opinion that the additional taxes demanded of the Dunn Estate covering the periods after the 1941 and 1945 amendments, as set up in your audit are due and owing, unless the amount paid in cash, or at least a part thereof, was not paid for the gas but for the consideration of the cancellation of a prior contract. This brings us to a consideration of the fifth contention.

## FIFTH CONTENTION

We do not agree with this contention. Lessor did not at any time sell or agree to sell anything to the lessee except its one-eighth of the gas produced, either under the first contract or the amended contract. Although the first agreement turned out to be "onerous" to the lessee, it was an agreement providing for a "good faith sale price" for the one-eighth royalty. When lessor and lessee in their contract, provided that lessee was to pay to lessor for his one-eighth royalty, in addition to the amount received therefor by lessee, one-eighth of the amount received by lessee from the sale of gas to parties using same in Nueces County from wells situated on lands not covered by the lease, they were contracting for the "sale price" of the Dunn's one-eighth royalty. Likewise they contract for a "sale price" in the amended contract. The amended contract merely provided for a different method of computing the "sale price."

As stated above, there was no actual production of gas from the leased premises from May, 1941, through December, 1941. The lessee paid the Dunn Estate during this period on the minimum basis according to the amended contract. It is true that before there can be a gas production tax, there must be gas produced; but these payments were made to lessor as additional consideration for gas that had been and was to be produced thereafter under the contract. This same question was considered in Attorney General's Opinion O-6355, and we are enclosing a copy thereof.

It is, therefore, our opinion that the Dunn Estate is liable for an additional gas production tax as set up in the Comptroller's audit in the amount of $3,044.79 accruing under the 1941 amendment to Article 7047b, V.C.S., and is liable for the additional gas production tax as set up in said audit in the amount of $1,275.73 accruing under the 1945 amendment to Article 7047b, V.C.S.

## SUMMARY

Under the facts stated the Dunn Estate is not liable for the additional gas production taxes set up in the Comptroller's Audit for the period of time from the beginning of the audit to the effective date of the 1941 amendment of Art. 7047b, V.C.S., but is liable for the additional gas production taxes as disclosed by such audit for the period of time since the effective date of said 1941 amendment.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By W. V. Geppert

W. V. Geppert
Assistant

WVG/egt/lh/JCP

APPROVED

Fagan Dickson
FIRST ASSISTANT ATTORNEY GENERAL